IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEMARCO ARMSTEAD,

      Plaintiff,

                                    Civil Action 2:19-cv-4857
v.                              Judge Sarah D. Morrison
                                    Magistrate Judge Kimberly A. Jolson

BALDWIN, et al.,

      Defendants.

## REPORT AND RECOMMENDATION AND ORDER

Plaintiff Demarco Armstead's Motion for a Temporary Restraining Order (Doc. 6) is before the Undersigned. For the reasons that follow, it is **RECOMMENDED** that the Motion be **DENIED**. Defendants are **DIRECTED** to submit under seal Plaintiff's antiviral drug administration history records, similar to those submitted by the County Defendants, (*see* Doc. 40), from December 12, 2019, to the date of this Report and Recommendation by January 28, 2020.

## I. BACKGROUND

Plaintiff, who is proceeding *pro se*, and is currently being detained at Franklin County Correctional Center, has brought this suit against 24 Defendants. Plaintiff's 35-page handwritten Complaint asserts numerous claims, including religious discrimination, excessive use of force, retaliation, conspiracy, and deliberate indifference to his serious medical needs. (*See generally* Doc. 1-2). Since bringing this action, Plaintiff has filed 28 separate motions along with numerous letters and exhibits. (*See, e.g.*, Docs. 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 19, 29, 38, 39, 48, 49, 51, 58, 60, 61, 62, 63, 64, 65, 66, 67, 68, 70, 74, 75). Currently before the Undersigned is Plaintiff's Motion for Restraining Order. (Doc. 6). In his Motion, Plaintiff does not describe the injunctive

1

relief he seeks but rather asserts broadly that Defendants have failed to administer nearly 20 doses of his prescribed antiviral medication to treat his HIV. (*See generally id.*). More specifically, he alleges:

> [t]his facility and medical staff contracted to provide medical care to me has maintained a practice of providing inefficient and questionable medical services resulting in almost 20 missed doses of my mandatory life sustaining medication treatment regime, failure to respond to my urgent and emergency symptoms and chronic ailments. A custom of not addressing my health care needs [ ] physically devastating my already compromised condition. The substandard care has caused me to become fearful of my own survival and quality of life I will be able to enjoy. As a pretrial detainee, I am forced to endure torture because of poverty.

(*Id.*).

Defendants Baldwin, Blade, Blake, Bryant, Carmen, Chambers, Fargus, Farnsworth, Holt, Jane Doe, Jane Doe #1, Jane Doe #2, Jane Doe #3, John Doe #1, John Doe #2, Obrien, Probst, See, and Shroder (the "County Defendants") filed a timely response asserting that Plaintiff failed to identify his medical condition or prescribed medication and therefore failed to meet his burden for a restraining order. (Doc. 31). The Undersigned directed the County Defendants to do more work. (Doc. 33). Specifically, the Undersigned directed them to address Plaintiff's factual allegations. (*Id.* at 2). The County Defendants did so. On December 16, 2019, they filed a supplemental response along with relevant medical records, which were filed under seal. (*See* Docs. 35, 40, 41). Defendants NaphCare, Inc., Lyons, Stefanko, and Jones (the "NaphCare Defendants") also filed a response to Plaintiff's Motion. (*See* Doc. 55). Plaintiff has filed two reply briefs in support of his Motion. (*See* Doc. 58 at 48; Doc. 73). Thus, this matter is now ripe for resolution.

## II.  STANDARD

"The standard for addressing a motion for a temporary restraining order is the same as the standard applied to a motion for a preliminary injunction." *Ferron v. Search Cactus, L.L.C.*, No. 2:06-CV-327, 2007 WL 2110497, at *1 (S.D. Ohio July 13, 2007) (citation omitted). Both are

2

extraordinary measures, and the movant must meet a high burden to show that such a measure is justified. *See ACLU v. McCreary Cty.*, 354 F.3d 438, 444 (6th Cir. 2003); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). Indeed, the proof required to obtain this relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, the movant must show more than factual issues—he "must affirmatively demonstrate [his] entitlement to injunctive relief." *Davis v. Caruso*, No. 07-11740, 2008 WL 878878, at *3 (E.D. Mich. Mar. 28, 2008).

When considering whether to grant this extraordinary relief, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Employees Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

Under the first factor, to establish a strong likelihood of success on the merits, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This means that the movant must "show, at a minimum serious questions going to the merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.; Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1037 (6th Cir. 1995).

3

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2–02–178, 2002 WL 3140935, at *3 (S.D. Ohio August 12, 2002) (denying motion for injunctive relief after evaluation only of chance of success on the merits factor); *see also City of Pontiac Retired Employees Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

Under the second factor, the movant "must show that irreparable harm absent injunctive relief is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu v. Borgerding*, No. 16-13505, 2018 WL 6540262, at *4 (E.D. Mich. Oct. 31, 2018), *report and recommendation adopted*, No. CV 16-13505, 2018 WL 6527782 (E.D. Mich. Dec. 12, 2018) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (noting that "[a] district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury").

Under the third and fourth factors—harm to others and the public interest—the context of the case matters. In a prisoner civil rights case like this one, "[p]rison administrators [ ] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979). Consequently, "courts, especially federal courts, should be reluctant to become involved in the internal administration" of correctional institutions. *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980).

Finally, in addition to the above factors, Plaintiff's case is also subject to § 802 of the Prison Litigation Reform Act (the "PLRA"), which requires preliminary injunctive relief to "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

## III. DISCUSSION

In his Motion, Plaintiff asserts that he has missed nearly 20 doses of his antiviral medication. (*See* Doc. 6). It appears that Plaintiff is claiming that Defendants' alleged failure to adequately treat his HIV violates the Eighth Amendment's prohibition against cruel and unusual punishment. (*See* Doc. 23 at 3 (asserting in his Complaint that Defendants' failure to provide medical care is akin to unconstitutional torture)). While Plaintiff's Complaint alleges deliberate indifference to his other alleged health conditions, including for example, skin allergies, prolonged injuries from gunshot wounds, and post-traumatic stress disorder, (*see generally* Doc. 23 at 1–2), his Motion for a Temporary Restraining Order, (Doc. 6), contains allegations regarding only his antiviral medication. The Court will therefore limit its discussion to those claims.

### A. Likelihood of Success on the Merits

"The government runs afoul of the Eighth Amendment with respect to inmate medical care when it is deliberately indifferent to a prisoner's serious medical needs." *Mason v. Eddy*, No. 1:18 CV 2968, 2019 WL 3766804, at *5 (N.D. Ohio Aug. 9, 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). To prevail on a deliberate indifference claim, the inmate must satisfy a two-pronged test containing both an objective and a subjective prong. *Kensu*, 2018 WL 6540262, at *7. Under the objective prong, an inmate must show a "'sufficiently serious'" medical need. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

5

Then, under the subjective prong, an inmate must show that defendants "possess[ed] a sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quotation marks and citation omitted). Put simply, "there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Grose v. Corr. Med. Servs.*, No. 06-CV-15175, 2009 WL 2741797, at *7 (E.D. Mich. Aug. 25, 2009), *aff'd sub nom. Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986 (6th Cir. 2010).

Applying that standard here, Plaintiff has a "sufficiently serious" medical condition, and his Eighth Amendment claims concerning the treatment of that condition therefore satisfy the objective prong. *See, e.g.*, *Taylor v. Naqvi*, No. 3:17-CV-00920-VLB, 2017 WL 2662192, at *2 (D. Conn. June 20, 2017) (finding that HIV is a sufficiently serious medical condition under the objective prong of the deliberate indifference test) (citing *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003)). So the objection prong is satisfied.

But Plaintiff is unable to show a strong likelihood of success under the subjective prong. To start, Plaintiff received consistent medical treatment for his HIV and other health concerns since being detained at Franklin County Correctional Center. Indeed, the record reveals that he has filed over 100 health care grievances against medical staff, to which medical staff generally responded. (*See generally* Doc. 58; Doc. 23-3 at 19). And, while Plaintiff alleges that he has missed nearly 20 doses of antiviral medications, the record shows that he has received over 230 doses of antiviral medication between March 2019 and December 2019. (*See generally* Doc. 40). This treatment history matters because the Sixth Circuit "distinguish[es] between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a

prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id*.

Here, as noted, Plaintiff has received hundreds of doses of his antiviral medication during 2019. (*See generally* Doc. 40). His claims therefore concern the adequacy and not total denial of medical care. Case law directs this Court to tread carefully before determining that such alleged treatment inadequacy amounts to deliberate indifference. *See Manley v. LNU*, No. 13-13877, 2014 WL 4609129, at *3 (E.D. Mich. May 14, 2014), *report and recommendation adopted sub nom. Manley v. Corizon Healthcare*, No. 13-13877, 2014 WL 4609862 (E.D. Mich. Sept. 15, 2014) (noting that, while the "interruption of a prescribed treatment plan [] or a delay in medical treatment can establish deliberate indifference," the court must also "consider the wide discretion allowed prison officials in their treatment of prisoners under authorized medical procedures") (quotation marks and citation omitted). With that gloss in mind, the Undersigned must decide whether Plaintiff is likely to show that Defendants were deliberately indifferent to his medical needs.

The record shows that Plaintiff did not receive his daily dose of antiviral medication 16 times between March and December 2019. In parsing the exhibits, it appears that the missed doses fall into one of three general categories. First, Defendants concede, and the record confirms that the jail ran out of Plaintiff's prescription on six separate occasions. (*See* Doc. 40 at 5, 11, 12, 17 (listing prescription administration as "pending pharmacy delivery" on the following dates: May 3, 2019; May 4, 2019; May 5, 2019; June 24, 2019; July 18, 2019; and November 10, 2019)). Second, the record demonstrates that Plaintiff "refused" his medication on four separate occasions.

(*See id.* at 11, 15, 17, 20 (documenting that Plaintiff "refused" medication on the following dates: March 16, 2019; May 6, 2019; May 31, 2019; and July 19, 2019)). Finally, the record indicates that Plaintiff failed to appear for his daily "medication pass" on six separate occasions. (*See* Doc. 40 at 10, 12, 16, 18 (documenting "no show for medication pass" on the following dates: April 8, 2019; April 9, 2019; May 16, 2019; June 29, 2019; July 2, 2019; and August 2, 2019)).

Turning first to the latter two categories of missed medication, Plaintiff asserts that he refused his medication while fasting for Ramadan and that medical staff failed to return after sundown to administer his medication. (Doc. 23 at 1). He also explains that he missed the medication pass because he suffers from "excessive tiredness," for which Defendants have allegedly failed to accommodate. (*Id.* at 2). Despite these explanations, Plaintiff has failed to allege much less establish that Defendants intentionally withheld his medicine. While medical staff may have agreed to return to Plaintiff's cell after sundown, their failure to do so is not "tantamount to intent to punish." *Broyles*, 478 F. App'x at 975. Nor does their alleged failure to wake Plaintiff for his medication rise to the level of deliberate indifference. To the contrary, the record shows, for example, that medical staff knew of and responded to Plaintiff's concern that he slept through the medication pass. (*See* Doc. 23-3 at 61 (responding to Plaintiff's grievance and stating that "medication pass is announced upon arrival to the unit" and "it is your responsibility to get up for your medication")).

Said plainly, there is nothing to suggest that Defendants, in failing to wake Plaintiff for his medication or administering the medication after Ramadan, intentionally withheld Plaintiff's medication. *See, e.g.*, *Mason*, 2019 WL 3766804, at \*12 (noting that plaintiff "cannot attempt to dictate the treatment he receives by refusing to take prescribed anti-viral medication and then claim that prison officials are deliberately indifferent because they failed to provide him with a different

8

medication that he prefers, and his disagreement with the HIV treatment provided does not give rise to a constitutional claim for deliberate indifference") (quotation marks and citation omitted); *Kensu*, 2018 WL 6540262, at 14 n.9 (holding that difficulty "getting to the medicine" or missing his "call-out" for medication due to visitors did "not suggest that the defendants are actively preventing plaintiff from receiving his daily dose").

Turning to the remaining category of missed medication—instances when the institution ran out of Plaintiff's prescription—the Undersigned must decide not whether Plaintiff received perfect treatment. The only question for the Court is whether Defendants were deliberately indifferent to Plaintiff's medical needs. Perhaps, medical staff could have exercised more diligence in ensuring that Plaintiff's medication did not run out. But a constitutional claim for deliberate indifference "requires more than negligence or carelessness." *Owens v. O'Dea*, 149 F.3d 1184 (6th Cir. 1998) (finding no evidence that medical treatment for plaintiff's HIV was deliberately or indifferently withheld). And, "[a]n alleged inadvertent failure to provide adequate medical care, while perhaps evidence of medical malpractice, does not evidence sufficiently harmful acts or omissions to state a cognizable claim." *Id*. Rather, it reflects "questionable medical judgment," which at most, states "a claim for a medical malpractice, as opposed to a constitutional violation." *Id*.

Here, based on the record before the Undersigned, Plaintiff has alleged, at the very most, a claim for negligence—not a constitutional violation. Indeed, Plaintiff filed a medical grievance on June 27, 2019, complaining that his medication was out of stock. (*See* Doc. 23-3 at 79). Medical staff responded to the grievance, stating that, "on chart review, medications have been pending pharmacy delivery on 4 out of 9 missed doses, the remaining 5 missed doses due to no-show to medication pass/refusal" and that nurses were "educated re: importance of medication

9

compliance and upkeep of stock." (*Id*.). It appears therefore that medical staff were not deliberately indifferent to the importance of medication compliance but rather were aware of the issue and worked to resolve it.

The case law is clear that there is no constitutional violation in such instances. *Compare Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) (holding that prison officials were deliberately indifferent to prisoner's serious medical needs when they "were aware of [the prisoner's] diagnosis with HIV and hepatitis but completely withdrew the prescribed treatment for [his illness]") *with Kensu*, 2018 WL 6540262, at *9 (finding that "it d[id] not appear that the lapse in the prescription was due to anything more than, at most, mere negligence or medical malpractice," which are insufficient to satisfy a deliberate indifference claim); *Kenion v. Kiby*, No. 5:15-CV-15-FDW, 2015 WL 2345653, at *2 (W.D.N.C. May 14, 2015) (holding that two incidents of plaintiff not receiving his insulin shot at the prescribed time did "not rise to the level of deliberate indifference"); *Ragland*, 2012 WL 511827, at *10 (holding that "isolated incidents of missed medications" failed to state a claim for deliberate indifference); *Williams v. Turner*, No. 4:10-CV-04053, 2011 WL 4633106, at *7 (W.D. Ark. Oct. 6, 2011) (finding that, while "the medical staff could have been more diligent in ensuring there was a continuous supply of [cancer medication] available at the facility," there was no evidence of deliberate indifference, especially because plaintiff often refused the medication); *Steelman v. Baker*, No. 9:05CV244, 2006 WL 483563, at *4 (E.D. Tex. Feb. 28, 2006) ("The jail records show that Steelman was provided with numerous medications, for which the prescriptions were regularly renewed. While there may have been at times a brief delay in getting some of these medications renewed, . . . he has failed to show that these apparently isolated incidents rose to the level of constitutionally deliberate indifference to his medical needs, rather than negligence or carelessness."); *Adams v. Feinerman*, No. CIV. 03-

762-WDS, 2005 WL 1653769, at *3 (S.D. Ill. July 11, 2005) (holding that the fact that plaintiff's Parkinson's medication was occasionally out of stock, "while regrettable," did "not amount to a constitutional claim" but "[a]t best, describe[d] negligence, which is not actionable under the Eighth Amendment").

In sum, Plaintiff has not shown a substantial likelihood of success on the merits of his deliberate indifference claim and, consequently, has not met his burden to justify a temporary restraining order.

## B. Remaining Factors

Briefly, the remaining three factors also weigh against the extraordinary relief Plaintiff seeks. Under the second factor, whether Plaintiff will suffer irreparable injury absent injunctive relief, Plaintiff "must show that irreparable harm is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu*, 2018 WL 6540262, at *10 (quoting *Griepentrog*, 945 F.2d at 154). Plaintiff's claims, however, relate to past instances of missed medication. And, as one district court explained, past harm does not justify a preliminary injunction:

> In addition, Carter has not even alleged that he would suffer irreparable injury without the injunction. He has not explained how he has continued to suffer adverse effects from his medical treatment, only that he was delayed or denied in getting [his multiple sclerosis] medication in the past. This cannot be the basis for the grant of a preliminary injunction because it is well settled that a preliminary injunction cannot be issued based on past harm. The purpose of a preliminary injunction is to prevent future irreparable harm.

*Carter v. Mich. Dep't of Corr.*, No. 12-CV-12621, 2013 WL 5291567, at *6 (E.D. Mich. Sept. 19, 2013), *aff'd* (Sept. 26, 2014) (quotation marks, alterations, and citations omitted). The same is true here. Plaintiff asserts that he could develop acquired drug resistance or that his HIV could become AIDS. (*See* Doc. 58 at 55). But the record shows that Plaintiff is continuing to receive his medication and that the jail ran out of his medication only once between August 2019 and

11

November 2019. Given the importance of medication adherence, however, and to ensure that Plaintiff has continued to receive his medication, Defendants are **DIRECTED** to submit under seal Plaintiff's antiviral drug administration records, similar to those submitted by the County Defendants, (*see* Doc. 40), from December 12, 2019, to the date of this Report and Recommendation by January 28, 2020.

Finally, with regard to the third and fourth factors, while a temporary restraining order in this case is unlikely to substantially harm others, the Undersigned "must be mindful of the cautions that apply to issuing an injunction that affects the operation of the prison system, which also shows that the public interest would not be served by issuing the injunction." *Carter*, 2013 WL 5291567, at *6; *see also Mason*, 2019 WL 3766804, at *13 (denying motion for preliminary injunction concerning treatment of plaintiff's HIV and noting that, "[w]ith respect to the public interest factor, in the absence of a constitutional violation 'concepts of separation of powers and federalism strongly discourage federal courts from entangling themselves in the administration of prison health care systems'") (quoting *Winn v. Waugaman*, No. 0:14-CV-169-HRW, 2015 WL 1606151, at *5 (E.D. Ky. Apr. 8, 2015) (declining to issue preliminary injunction ordering doctor to provide prescription pain medication that was discontinued in lieu of over-the-counter medication)). Here, the Undersigned will require Defendants to update the Court on medication compliance. Any further injunctive relief would tread too heavily on the institution's ability to manage the intricacies of pretrial detainees' healthcare. *See id*.

## IV.    CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for a Temporary Restraining Order (Doc. 6) be **DENIED**. Defendants are **DIRECTED** to submit under seal Plaintiff's antiviral drug administration records, similar to those submitted by the County

Defendants, (*see* Doc. 40), from December 12, 2019, to the date of this Report and Recommendation by January 28, 2020.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: January 14, 2020              /s/ Kimberly A. Jolson
                                    KIMBERLY A. JOLSON
                                    UNITED STATES MAGISTRATE JUDGE