# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEMARCO ARMSTEAD,**

        **Plaintiff,**

                                 **Civil Action 2:19-cv-4857**
     **v.**                         **Judge Sarah D. Morrison**
                                 **Magistrate Judge Kimberly A. Jolson**

**BALDWIN, et al.,**

        **Defendants.**

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Undersigned for a screen of Plaintiff's Complaint (Doc. 1-2) under 28 U.S.C. § 1915(e)(2).

For the following reasons, it is **RECOMMENDED** that Plaintiff may, at this time, proceed with the following:

- medical deliberate indifference claims;
- excessive force claims;
- conditions-of-confinement claims;
- Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims;
- retaliation claims;
- access-to-the-courts claims; and
- due process claims.

But, as explained below, it is **RECOMMENDED** that Plaintiff's claims relating to Franklin County Correctional Center's ("FCCC") grievance system be **DENIED**. It is further **RECOMMENDED**, for the reasons below, that Defendants Bryant, Farnsworth, and Lewis be **DISMISSED** from this case.

## I.      BACKGROUND

Plaintiff, who is proceeding pro se, and is currently serving time at FCCC, has brought suit

under 42 U.S.C. § 1983 against Defendants Baldwin, Bryant, Schrader, Brobst, Chambers, Blade, O'Brien, Farnsworth, Blake, Farkas, Carmen, Fultz, See, Lewis (collectively, the "County Defendants"), Lyons, Jones, Stefanko, Nurses Jane Does #1, #2, and #3, Dr. Jane Doe, and NaphCare (collectively, the "NaphCare Defendants"). (Doc. 1-2). Plaintiff's 35-page handwritten Complaint asserts numerous claims, including, among others, religious discrimination, excessive use of force, retaliation, conspiracy, and deliberate indifference. (*See generally id*.).

Since filing his Complaint on November 4, 2019, Plaintiff has filed over fifty Motions and dozens of exhibits and letters. While Plaintiff's Complaint spans vast legal territory, the Court, up until this point, has focused its attention on Plaintiff's motions for immediate injunctive relief regarding the administration of his HIV medications. Having concluded that a preliminary injunction is not, at least at this juncture, warranted, (*see* Docs. 78, 115), the Undersigned now considers the merits of Plaintiff's pleadings.

## II.     SCREENING STANDARD

"Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune." *Lane v. Anderson Cty., Tennessee*, No. 3:20-CV-102-TAV-DCP, 2020 WL 1189928, at *1 (E.D. Tenn. Mar. 12, 2020) (citing 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999)). To survive a screen under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lane*, 2020 WL 1189928, at *1 (quotation marks and citations omitted).

Importantly, courts liberally construe pro se prisoners' pleadings and hold them to a lower scrutiny than formal pleadings drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520

(1972). At the same time, however, "[a]llegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim[.]" *Lane*, 2020 WL 1189928, at *1 (citations omitted). And "formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts" also fail to pass a screen. *Id.* (citation omitted).

## III.   ANALYSIS

Construing the Complaint broadly, Plaintiff has asserted the following nine claims: (1) deliberate indifference to his medical needs; (2) excessive force; (3) conditions of confinement; (4) religious discrimination under RLUIPA; (5) retaliation; (6) inability to access the courts; (7) due process (8) ineffective institutional grievance system; and (9) habeas corpus. (*See generally* Doc. 1-2).

Before turning to the merits of each, the Undersigned first considers whether Plaintiff's Complaint satisfies a basic requirement under § 1983—direct involvement. "[T]he Sixth Circuit requires some sort of direct involvement, whether through encouragement, participation, or at the very least knowing acquiescence, in order to impose liability under § 1983." *Lupo v. Voinovich*, 235 F. Supp. 2d 782, 793 (S.D. Ohio 2002). And, relevant here, "[s]upervisory liability cannot be imposed in a Section 1983 action based on a theory of *respondeat superior* without proof of personal involvement." *Dillingham v. Millsaps*, 809 F. Supp. 2d 820, 844 (E.D. Tenn. 2011) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995)). Rather, to establish supervisory liability, "there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Rayburn v. Blue*, 154 F. Supp. 3d 523, 531 (W.D. Ky. 2015) (quotation marks, citations, and alterations omitted). In other words, "[l]iability of supervisory personnel must be based on more than merely the right to control

employees" and "cannot be based upon a mere failure to act." *Id.* (quotation marks, citation, and alteration omitted).

Here, Plaintiff has failed to make specific allegations of personal involvement against Defendants Farnsworth, and Lewis. It is thus **RECOMMENDED** they be **DISMISSED** from this case.

The Undersigned considers now whether Plaintiff's individual claims may proceed beyond the screening stage.

## A. Deliberate Indifference

First, Plaintiff alleges that the NaphCare Defendants have been deliberately indifferent to his serious medical needs. For example, he alleges:

> I have been incarcerated since March 16, 2019. I have repeatedly sought care in the way of diagnostic analysis, reasonable accommodation for chronic life threatening injuries caused by 3 retain bullets from gunshot wounds to my head, neck between my trachea and windpipe and in my back that entered through the neck permanently fracturing my neck/spinal/vertebre [sic]. I have been denied my PTSD medication because of as needed dosage instructions. My symptomatic medical complaints relating to my debilitating viral chronic condition have been repeatedly ignored. My chronic condition life sustaining medication has been denied on several occasions it took approx. 3 days after being admitted for the facility to initated [sic] the start of my medication. On 4/30/19 the nurse on medpass refused to administer my medications. My medication was allowed to run out of stock on 3 occasions due to inefficiencies of the medical staff to maintain adequant [sic] supplies. On 5/3/19 I missed first dose in May because of stocking issues, 5/4/19, 5/519, and 5/6/19 Also medication wasn't available. Medication was allowed to run out of stock on 6/23/19 and 6/24/19 again on 7/18/19 and 7/19/19.

(Doc. 1-2 at 1). He further alleges that, as a result of missing doses of his HIV medication, his "viral load" changed from "non-detectable" to "detectable." (*Id.* at 2). According to him, "[m]edical staff have acted with deliberate indifference and reckless intention toward [his] well being" and that "[m]edical staff have become dishonest with [his] institutional medical record and the manner in which they address their own grievances." (*Id.* at 2).

"The government runs afoul of the Eighth Amendment with respect to inmate medical care when it is deliberately indifferent to a prisoner's serious medical needs." *Mason v. Eddy*, No. 1:18-cv-2968, 2019 WL 3766804, at *5 (N.D. Ohio Aug. 9, 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). To prevail on a deliberate indifference claim, the inmate must satisfy a two-pronged test containing both an objective and a subjective prong. *Kensu v. Borgerding*, No. 16-13505, 2018 WL 6540262, at *7 (E.D. Mich. Oct. 31, 2018), *report and recommendation adopted*, No. cv-16-13505, 2018 WL 6527782 (E.D. Mich. Dec. 12, 2018). Under the objective prong, an inmate must show a "'sufficiently serious'" medical need. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under the subjective prong, an inmate must show that defendants "possess[ed] a sufficiently culpable state of mind, rising above negligence or even gross negligence and being tantamount to intent to punish." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (quotation marks and citation omitted). Put simply, "there must be a knowing failure or refusal to provide urgently needed medical care which causes a residual injury that could have been prevented with timely attention." *Grose v. Corr. Med. Servs.*, No. 06-CV-15175, 2009 WL 2741797, at *7 (E.D. Mich. Aug. 25, 2009), *aff'd sub nom. Grose v. Corr. Med. Servs. Inc.*, 400 F. App'x 986 (6th Cir. 2010)).

Applying the above standard to Plaintiff's pleadings, the Undersigned finds that Plaintiff has pled sufficient factual allegations to state a cognizable medical deliberate indifference claim against the NaphCare Defendants.

## B. Excessive Force

Next, Plaintiff raises an excessive force claim stemming from one alleged incident. He alleges that, on August 25, 2019, while being "transported to clinic for labs," Defendants See and Blade "began to give [him] a hard time" as they waited for Plaintiff's appointment. (Doc. 1-2 at

11).  He alleges that, although he was handcuffed and shackled, Defendant Blade "start[ed] to push [him] and forcibl[y] held [him] against the wall."  (*Id*.).  Plaintiff alleges that "the nurse [came] out of the clinic because of the commotion and [said] the labs [could] be completed another time." (*Id*.).  As Defendants See and Blade walked him back to his cell, they allegedly "beg[a]n to unnecessarily push [him] from behind while yanking [his] arms forward" and "tackled [him] to the ground in the 3rd floor lobby" while Defendant Blade "la[id] on top of [him] while 1st ramming his forearm in the back of [his] neck while [he was] laying [sic] flat on the ground[.]"  (*Id*.). Defendant Blade allegedly began "choking [him]" with his forearm as Defendant See "la[id] on [his] left side and beg[an] punching [him] in the ribs."  (*Id*.).  Plaintiff alleges that, after the incident, he "started experiencing pain in [his] ribs, swelling, [] difficulty swallowing," and "extreme pain in the back of [his] neck where a bone is fractured on [his] spinal vertebrae."  (*Id*. at 12).

"When a plaintiff alleges excessive physical force in violation of the Eighth Amendment, 'the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Smith v. Ohio Dep't of Rehab. & Correction*, No. 4:18CV1493, 2019 WL 2076088, at *5 (N.D. Ohio May 9, 2019) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Taking his allegations at face value, as required at the pleading stage, Plaintiff has pled a cognizable excessive force claim against Defendants Blade and See.

### C.  Conditions of Confinement

Next, Plaintiff brings a series of challenges to the conditions of his confinement.  (*See* Doc. 1-2 at 17–18).  Specifically, he alleges that he was deprived a blanket and "safety mattress," forcing him to "lay naked on a rusted steel bunk with peeling lead paint."  (Doc. 1-2 at 17).  He alleges

that he was moved to another cell "covered in fecal matter and trash" and was "denied cleaning supplies until [the] next day." (*Id*.). He alleges that the toilet "back[ed] up twice" and that "sewage would leak out from the walls constantly[.]" (*Id*.). According to his Complaint, he was moved again, this time to a cell with "no running cold drinking water and visible mold spores on the ceiling." (*Id*.). After filing a grievance, he was allegedly moved again. (*Id*.). Once "back to the 3rd floor," Plaintiff Defendants Fultz, Carmen, and Farkas allegedly refused him access to recreation, the shower, and the phone. (*Id*. at 18).

Plaintiff also describes an alleged encounter with Defendant O'Brien. He alleges that he had his "privacy cotton blanket up" and Defendant O'Brien "remove[d] the blanket from [his] cell bars revealing [him] naked from the waist down defecating seated on the toilet in [his] cell." (Doc. 1-2 at 13; *see also* Doc. 42 at 2 (alleging the same)). He alleges that Defendant O'Brien took his blanket, handcuffed him, and removed his shampoo and meal condiments. (*Id*.). And without a blanket, Plaintiff alleges that he had to endure cold temperatures as a "chronic care patient." (*Id*.).

An Eighth Amendment conditions-of-confinement claim has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Pollock v. Lavender*, No. 2:11-CV-00114, 2011 WL 2148584, at *3 (S.D. Ohio May 31, 2011) (quotation marks and citations omitted), *report and recommendation adopted*, No. 2:11-CV-00114, 2011 WL 2637329 (S.D. Ohio July 6, 2011). "Second, the prison official's state of mind must be one of deliberate indifference to inmate health or safety." *Id*. (quotation marks, citations, and alterations omitted).

Additionally, "to state a viable conditions of confinement claim extreme deprivations are required because routine discomfort is part of the penalty that criminal offenders pay for their

offenses against society[.]" *Id.* (quotation marks, citations, and alterations omitted). And, relevant here, § 1983's direct involvement rule "does not apply to cases in which ongoing conditions of confinement are being challenged." *Bowers v. Livingston Cty.*, No. 08-CV-14134, 2009 WL 10679417, at *2 (E.D. Mich. Dec. 11, 2009), *aff'd*, 426 F. App'x 371 (6th Cir. 2011) (citations omitted).

For purposes of this screen, Plaintiff has pled a plausible conditions-of-confinement claim.

### D. RLUIPA

Next, Plaintiff makes numerous allegations of religious discrimination. In parsing Plaintiff's Complaint, the Undersigned can make out four distinct religious discrimination claims. First, Plaintiff alleges that "nursing staff" failed to accommodate his Ramadan fast by administering his medications after sundown. (Doc. 1-2 at 1). Second, he alleges that Defendants have failed to accommodate his religious diet. (*Id.* at 5–8). Third, he alleges that he is not permitted to "engage in communal prayers" or "study" with other Muslims. (*Id.* at 8). Finally, he sets forth one discreet incident involving Defendant Blade. According to his Complaint, Plaintiff placed a "see thru cotton blanket up covering direct view into cell hanging along the bars while [he was] completely naked in [his] cell performing religious absolution before breaking [his] fast for Ramadan." (Doc. 1-2 at 13). Defendant Blade allegedly told Plaintiff he was not allowed to have the blanket up, which Plaintiff states he "know[s] to be a lie per Franklin County's policy and the American Correctional Asso. recommendations when correctional facilities are staffed with both sexes." (*Id.*).

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering"

that interest. 42 U.S.C. § 2000cc-1(a). Relevant here, RLUIPA does not provide monetary damages against state prison officials when sued in their official or individual capacities. *See Sossamon v. Texas*, 563 U.S. 277, 280 (2011); *Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014). Also, relevant here, RLUIPA, like § 1983 requires allegations of "direct involvement." *Jacobs v. Strickland*, No. 2:08-CV-680, 2009 WL 1911781, at *3 (S.D. Ohio June 30, 2009) (dismissing prisoner's RLUIPA claims that failed to allege direct involvement of the named defendants), *report and recommendation adopted*, No. 2:08-CV-680, 2009 WL 2476896 (S.D. Ohio Aug. 11, 2009).

Even applying a liberal reading to Plaintiff's Complaint, the Undersigned notes that Plaintiff directly accuses only a handful of Defendants of religious discrimination. As for his first claim, regarding his medications, Plaintiff alleges that "nursing staff" failed to accommodate his Ramadan fast. (Doc. 1-2 at 1). Given his pro se status, he may proceed with this claim against the NaphCare Defendants. Regarding his second and third claims—concerning his religious diet and his ability to pray with others of his faith—Plaintiff makes concrete factual allegations against only FCCC's Chaplain, Defendant Chambers. (*Id*. at 5–8). Later on, Plaintiff alleges that Defendants Blade and Farkas attempted to prevent him from receiving his Ramadan meals in retaliation for filing grievances against them. (Doc. 1-2 at 15). Again, because of his pro se status, Plaintiff may proceed with his religious diet claims against Defendants Blade, Farkas, and Chambers. But he may proceed with his free exercise claim against only Defendant Chambers. Finally, Plaintiff's allegations regarding the removal of his blanket during a religious ceremony satisfy basic pleading standards and may proceed at this juncture.

### E.  Retaliation

Plaintiff also claims that he has been retaliated against for filing grievances and this lawsuit.

As noted, he alleges that Defendants Blade and Farkas made retaliatory attempts to thwart the administration of his Ramadan meals and medications. (Doc. 1-2 at 15–16; *see also* Doc. 42 at 1). Additionally, he alleges that Defendant Farkas handcuffed him and made "a big mess" of his cell, while yelling, "are you gonna fill out another call card?" (Doc. 1-2 at 16). He also alleges that, "[a]s it became known [he] was preparing a civil suit, "[s]taff," including Defendants Blade, Farkas, Fultz, and Carmen started "denying [him] attorney and legal calls," showers, and recreation. (*Id*. at 18–19).

Further, in a proposed pleading, Plaintiff asserts retaliation claims against "Sgt. Howard" and "John Doe Deputies." (*See* Doc. 90). He alleges that, on January 15, 2020, "Sgt. Howard abruptly ended [his] legal call and had deputies seize and remove [him] by force." (*Id*. at 2). Additionally, he alleges that "[John Doe] [d]eputies were maliciously trying to inflict physical torture and psychological trauma by the over aggressive response used to abstract [him], calling [him] 'trouble maker' . . . for the civil action [he is] currently engage[d] in[.]" (*Id*. at 3).

Finally, in another proposed pleading, Plaintiff alleges that "Sgt. Day" and "Dep. Hood" intentionally prevented him access to the law library and law library laptop in retaliation for his grievances and the filing of this lawsuit. (*See* Doc. 127-1 at 1–2).

A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in the protected speech or conduct; and (3) there is a causal connection between the first two elements—that is, the adverse action was motivated at least in part by the plaintiff's protected speech or conduct. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).

Construing his allegations in a light most favorable to Plaintiff, the Undersigned concludes

that Plaintiff may proceed with his retaliation claims against Defendants Blade, Farkas, Fultz, Carmen, Howard, John Doe Deputies, Day, and Hood.

### F. Access to the Courts

Next, Plaintiff asserts difficulties accessing legal phone calls and the institution's law library. More specifically, he alleges that Defendants Blake, Farkas, Fultz, and Carmen have refused to let him out of his cell for "legal" and other calls. (*Id*. at 19). And, as noted, Plaintiff has moved to amend to add allegations about his access the law library. (Doc. 127-1 at 1–2 (alleging that "Sgt. Day" and "Dep. Hood" prevented him access to the law library's laptop)).

"It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments." *Downing v. Greer*, No. 1:11-CV-372, 2011 WL 3739023, at *4 (W.D. Mich. Aug. 23, 2011) (citing *Lewis v. Casey*, 518 U.S. 343; 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Prison officials' duty to protect this right is "two-fold." *Id*. "First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration." *Id*. (citing *McFarland v. Luttrell*, No. 94–6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995)). "Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts." *Id*. (citing *McFarland*, 1995 WL 10511, at *3).

To state a viable access-to-the-courts claim, a plaintiff must show "actual injury" to non-frivolous "pending or contemplated litigation." *Downing*, 2011 WL 3739023, at *4–5 (collecting cases). And, as with most § 1983 claims, the plaintiff must allege how the defendants were directly involved in the alleged deprivation. *See, e.g.*, *Vincent v. Melton*, No. 2:09-00103, 2010 WL

3420333, at *12 (M.D. Tenn. Aug. 26, 2010), (dismissing pro se prisoner's access-to-the-courts claims where he "fail[ed[ to allege which Defendants personally engaged in conduct that denied him access to the courts"), *report and recommendation adopted*, No. 2:09-0103, 2010 WL 3703067 (M.D. Tenn. Sept. 14, 2010).

Applying that standard here, Plaintiff's allegations against Defendants Blake, Farkas, Fultz, Carmen, Day, and Hood, while thin, are enough to survive this screen.

**G.  Due Process**

Next, while not entirely clear, Plaintiff appears to be raising procedural due process violations.  His allegations fall into two general categories.  First, he alleges that he was placed on "unconstitutional restrictions … with no disciplinary notice, ticket or hearing conducted or written statements of evidence or decisions made."  (Doc. 1-2 at 18; *see also id*. at 20 (alleging that Defendants refused to explain his heightened disciplinary status)).  Applying a liberal interpretation, it seems he is claiming that, as a result of his changed status, Defendants Blake, Farkas, Fultz, and Carmen denied him access to basic rights, like phone calls, showers, and recreation.  (*See id*. at 19 (alleging that, "whenever [he] asks for a shower or recreation," prison guards refuse, "cit[ing] an unfounded or [un]proven violation and restriction that [he] has not received a notice, ticket, or hearing for")).

Second, Plaintiff challenges the procedures at his disciplinary hearings.  More specifically, he alleges that Defendants Brobst and Schrader "refused to allow [him] to examine evidence" at disciplinary proceedings.  (*Id*. at 21).  In a proposed pleading, he alleges the same against "Sgt. McDowell."  (Doc. 90 at 5).

Regarding the alleged change to Plaintiff's disciplinary status, "[t]he Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of

confinement having an impact on a prisoner." *Kirkland v. McKee*, No. 1:08-CV-861, 2009 WL 1542899, at \*5 (W.D. Mich. June 2, 2009) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Rather, "a prisoner is entitled to the protections of due process only when a deprivation imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirkland*, 2009 WL 1542899, at \*5 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

As for an inmate's due process rights at a disciplinary hearing, "[d]ue process requires that the prisoner receive written notice of the charges against him at least 24 hours before the hearing, an opportunity to call witnesses and present documentary evidence in his defense, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Powell v. Washington*, 720 F. App'x 222, 227 (6th Cir. 2017) (citing *Wolff*, 418 U.S. at 563–67).

The Undersigned finds that Plaintiff has set forth sufficient factual allegations to raise a plausible due process claim against Defendants Blake, Farkas, Fultz, Carmen, Schrader, and McDowell.

### H.  Ineffective Grievance Procedures

Throughout his Complaint, Plaintiff challenges Defendants' alleged failure to respond to his internal grievances.  (*See, e.g.*, Doc. 1-2 at 17–18 (alleging that "[t]he practice of staff is to read your call card and based on its content forward it to the appropriate staff member, department or just throw away if the nature of the complaint/request is not favorable to staff or institution" and that, "[u]nlike the medical call cards that provide a carbon receipt when submitted, the institutional call cards offer no receipt acknowledging its reception, so staff routinely pretend complaints don't exist")).

But "[t]here is no cause of action for the improper adjudication of, or failure to adjudicate, an inmate's grievances." *Taylor v. Luttrell*, No. 06-2522-AN/V, 2008 WL 4065927, at \*5 (W.D.

13

Tenn. Aug. 27, 2008); *see also Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 3036493, at *3 (W.D. Mich. Oct. 16, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access to an institutional grievance procedure.").

Because Plaintiff has no constitutional right to an effective prison grievance system, it is **RECOMMENDED** that these claims be **DISMISSED**. And, as these are the only claims lodged against Defendant Bryant, (*see, e.g.*, Doc. 42 (alleging that "Major Bryant and jail administration [have] failed to initiate/provide grievance forms/process for every claim I have mentioned in both the original and supplemental complaints"), it is **RECOMMENDED** that he be **DISMISSED**. *See, e.g.*, *Groomes v. Parker*, No. 08-2028-AN/P, 2008 WL 4057763, at *5 (W.D. Tenn. Aug. 26, 2008) ("Plaintiff also cannot sue any defendant for refusing to give him a grievance form, or for improperly handling or processing his grievances, because there is no cause of action for the improper adjudication of, or failure to adjudicate, an inmate's grievances.").

I. **Habeas Claims**

Throughout his Complaint, Plaintiff appears to be challenging his incarceration. (*See, e.g.*, Doc. 1-2 at 34 ("The lower Federal Courts antebellum interpretation of habeas corpus as a privilege designed to ensure that no arbitrary authority might act without warrant of due process of the law[.]"); *id.* at 35 (seeking his "immediate release by issuing a writ of habeas corpus")). As the Undersigned has already explained, (*see* Doc. 22), Plaintiff has brought this action as a prisoner civil rights case, (*see* Doc. 1-22), and, consequently, must pursue his claims for unlawful detention or imprisonment in a separate habeas action. It is, therefore, **RECOMMENDED** that Plaintiff's claims for habeas relief be **DENIED**.

\*       \*       \*

The Undersigned notes that, in permitting certain claims to proceed, she expresses no opinion on the merits of any arguments, not addressed here, that Defendants have raised or may

raise in a motion to dismiss.

## IV.   OTHER MOTIONS

### A.  Defendants' Motions to Stay Discovery

Both the NaphCare and County Defendants have filed Motions to Stay Discovery. (*See* Docs. 101, 103). In their Motions, they cite the hundreds of filings already lodged by Plaintiff, including his dozens of discovery requests. (*See id.*).

Up front, the Undersigned notes there has not yet been a scheduling order issued in this case, and at least two Defendants have not been served. As such, the parties should not be engaged in discovery at this time.

In any event, the Undersigned finds that it makes sense to stay discovery at this juncture. The NaphCare Defendants have filed a Motion to Dismiss (Doc. 53) raising potentially case-dispositive matters. And additional motions are likely on the horizon. Moreover, trial courts have broad discretion to stay discovery and may consider, among other factors, the relative burdens on the parties. *See Bell v. Caruso*, No. 1:07-CV-876, 2008 WL 2566754, at *1 (W.D. Mich. June 25, 2008). Here, the best course of action is to resolve any case-dispositive motions on the pleadings before launching into discovery. This will preserve both the Court's and Defendants' resources and "will [] allow the parties to narrowly tailor discovery to matters that are relevant to the issues before the Court." *Prison Legal News v. Bezotte*, No. 11-CV-13460, 2012 WL 5417457, at *1 (E.D. Mich. Nov. 6, 2012).

Accordingly, Defendants' Motions to Stay Discovery (Docs. 101, 103) are **GRANTED**, and discovery is hereby **STAYED**.

### B.  Discovery-Related Motions

Plaintiff has filed a number of discovery-related Motions in this matter. (*See* Docs. 66, 67

68, 70, 97, 99). His requests include, for example, interrogatory responses and the scheduling of depositions. (*See* Docs. 68, 70, 99). As noted, discovery will not begin until the Undersigned has issued a scheduling order.

Moreover, these Motions are improper under this Court's Local Rules and the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(d)(1); S.D. Ohio R. 37.2. "Objections, motions, applications, and requests relating to discovery shall not be filed in this Court . . . unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences." S.D. Ohio Civ. R. 37.2. "Pro se litigants are not exempt from the procedural rules in civil litigation." *Mitchell v. Clayton*, No. 13-11620, 2015 WL 71784, at *2 (E.D. Mich. Jan. 6, 2015); *see, e.g.*, *Perry v. Cousins*, No. 15-cv-13930, 2016 WL 5941831, at *2 (E.D. Mich. Oct. 13, 2016) (denying pro se prisoner's motion for discovery, explaining that "his discovery requests must first be directed to Defendant, not filed with this Court"). Because there is no evidence that Plaintiff first attempted to exhaust all extrajudicial means before filing these Motions, they are **DENIED without prejudice**.

Relatedly, Plaintiff seeks to admit hundreds of pages of exhibits into the record. (*See* Docs. 58, 98 134, 140, 152, 160, 163). These exhibits consist of, for example, copies of medical grievances and sick call requests. (*See, e.g.*, Doc. 58). The Undersigned notes that, while the Court has directed Defendants to submit medical records for the limited purpose of evaluating Plaintiff's Motion for a Preliminary Injunction, it has not directed Plaintiff to do the same. Moreover, Plaintiff's requests are premature as this case is still only at the pleading stage. Plaintiff may rely on evidence outside of the pleadings if and when his claims proceed to summary judgment. Consequently, his Motions to Admit Exhibits are **DENIED without prejudice**.

### C. Motions for Leave to Amend

Additionally, Plaintiff has filed multiple Motions to Amend.  (*See* Docs. 39, 75, 90, 104 108, 109, 114, 127, 128, 137, 144, 145, 151).

#### 1. Motions to Correct Spelling (Docs. 39, 137, 151, 161)

First, Plaintiff moves to correct the spelling of four Defendants.  (*See* Docs. 39, 137, 151, 161).  Those Motions are **GRANTED**, and the Clerk is **DIRECTED** to make the following changes on the docket: Schroder to Schrader; Probst to Brobst; Fargus to Farkas; and Holt to Fultz.  Given Plaintiff's concern with the proper spelling of Defendants' names, (*see generally id.*), counsel for Defendants shall contact the Clerk regarding any incorrect spellings.

#### 2. Motion to Amend to Add Allegations Against Six New Defendants (Doc. 90)

Second, Plaintiff moves to amend to add six Defendants and additional allegations regarding alleged events that took place in January 2020, after he filed his Complaint.  (Doc. 90).  As explained below, that Motion is **GRANTED in part** and **DENIED in part**.

In his proposed pleading, Plaintiff asserts retaliation claims against Defendant Farkas and "Jane Doe Nurse."  For example, he alleges that Defendant Farkas "remov[ed] [his] approved [] medication and legal documents from cell with the purpose of harassing [him], (*id.* at 7) and refused to allow the nurse to come to [his] cell to administer them or retrieve any sick call request," (*id.* at 5).  He also alleges that Defendant Farkas and "Jane Doe Nurse" "conspired to deny him his life-sustaining medication . . . in retaliation for civil action."  (*Id.* at 5–6).

Plaintiff also seeks to add claims for retaliation against "Sgt. Howard," "John Doe Deputies," and "Sgt. McDowell."  He alleges that, on January 15, 2020, "Sgt. Howard abruptly ended [his] legal call and had deputies seize and remove [him] by force."  (*Id.* at 2).  He further alleges that the "[John Doe] [d]eputies were maliciously trying to inflict physical torture and

psychological trauma by the over aggressive response used to abstract [him], calling [him] 'trouble maker' . . . for the civil action [he] [is] currently engage[d] in[.]" (*Id.* at 3). That same day, he allegedly received "a FCSO violation notice for misuse of the telephone" and, at the hearing, "Sgt McDowell refused to read or allow [him] to view the statements and narrative that [were] made against [him]." (*Id.* at 5).

Construing these allegations broadly, the Undersigned finds that they fall, generally, within the scope of Plaintiff's Complaint. And his Motion to add claims for retaliation and due process violations against Defendants Farkas, "Jane Doe Nurse," "Sgt. Howard," "John Doe Deputies," and "Sgt. McDowell" is **GRANTED**. But Plaintiff's Motion to add allegations against "Dep. Hood" for failing to disclose the name of a NaphCare nurse (*id.* at 5–6) fails to state a cognizable liberty interest and is **DENIED without prejudice**.

### 3. *Motion to Amend Allegations Regarding Medical Treatment (Docs. 75, 109, 114, 144, 145)*

Plaintiff's Motions to amend to add relevant claims regarding his medical treatment (Docs. 75, 114) are **GRANTED in part and DENIED in part**. While Plaintiff may amend to add these allegations, he may not, at this time, add exhibits to the docket to support these allegations (*see* Doc. 75-1).

Relatedly, Plaintiff has also moved to amend to name "Sandra Kane of NaphCare Inc.," previously identified as "Jane Doe" "for her conduct on 4/30/19 and multiple failures to administer Stribild in compliance with dosage instructions from on or about 3/16/19 to present." (Doc. 144). Because the Undersigned has permitted Plaintiff to proceed with his medical deliberate indifference claims and because the NaphCare Defendants are represented by common counsel, Plaintiff's Motion (Doc. 144) is **GRANTED**.

But Plaintiff's Motion to add as Defendants "all NaphCare staff members, who have shared

a direct role or responsibility in care or providing accommodation for [his] ADA/RA protected disability status and disability related medical issues," (Doc. 145 at 1–2), is far too broad in scope and is **DENIED without prejudice**. Through discovery, Plaintiff may seek to learn the names of additional NaphCare staff and move to amend, as he has done with Defendant Kane (Doc. 144).

Finally, Plaintiff's Motion asking the Court to "join all amendments and supplements to claims filed after 11/27/19" (Doc. 109) is improper under the Federal Rules of Civil Procedure and is **DENIED without prejudice**.

### 4. *Motion to Hold Franklin County Defendants Liable for NaphCare's Conduct (Doc. 104)*

Plaintiff also "asks the Court to joinder Franklin County Defendants in their official capacity to all claims attributed to NaphCare Inc. and NaphCare Defendants listed in the Plaintiff's pleadings." (Doc. 104 at 1). While not entirely clear, it appears that Plaintiff seeks to hold the County Defendants liable for the actions of the NaphCare Defendants under a theory of supervisory liability. (*See id*. at 1–2 (asserting that the Franklin County Defendants are liable for the unconstitutional policies of the NaphCare Defendants)).

Neither FCCC, the County, nor the Sheriff "can[] be held liable under [] § 1983 for the acts of private or public employees providing medical treatment unless the plaintiff can show that the conduct of the medical treaters was dictated by official policy of an organizational or supervisory defendant." *Jackson v. Siringas*, No. 12-15474, 2013 WL 3810301, at *14 (E.D. Mich. July 23, 2013) (citing *Doe v. Clairborne Cnty.*, 103 F.3d 497, 507 (6th Cir. 1996)), *aff'd* (May 15, 2014); *see also Day v. DeLong*, 358 F. Supp. 3d 687, 704 (S.D. Ohio 2019) ("[A] county is liable for any constitutional deprivations caused by the policies or customs of a contracted medical provider."), *reconsideration denied*, No. 3:16-CV-437, 2019 WL 1081348 (S.D. Ohio Mar. 7, 2019).

Plaintiff's allegations against the "Franklin County Defendants," (Doc. 104), including

Sheriff Baldwin are, essentially, "against [Franklin] County." *Day*, 358 F. Supp. 3d at 704. And at this early juncture, Plaintiff may proceed with his deliberate indifference claims against the County as well as against the NaphCare Defendants.

### 5. *Motions to Amend to Add Allegations Regarding Law Library*

Finally, Plaintiff seeks to add allegations concerning his access to the law library. (*See* Docs. 108, 127, 128). Plaintiff's Motions are **GRANTED**, and the Undersigned has considered these proposed pleadings for purposes of this screen.

*    *    *

The Undersigned has been generous in finding that most of Plaintiff's proposed pleadings relate back to his original Complaint. Moving forward, Plaintiff shall not, without leave of Court, move to amend to add allegations falling outside of the scope of what the Undersigned has permitted to proceed beyond this screen.

Such a rule curbs "the potential prejudice to the existing Defendants caused by the addition of new and otherwise unrelated claims." *Dyess v. Mullins*, No. 1:16-CV-910, 2017 WL 3838642, at *3 (S.D. Ohio Sept. 1, 2017) (denying pro se prisoner's "motion to amend to add claims relating to an entirely separate incident and involving three new Defendants"); *see also Hairston v. Maria*, No. 2:18-CV-378, 2018 WL 3628249, at *6 (S.D. Ohio July 31, 2018) (denying pro se prisoner's motion to add new defendants and "new events" as they "appear[ed] to have little or no relation to the claims raised in the original complaint").

Finally, as for the newly added Defendants, McDowell, Howard, Kane, Day, and, Hood, the Clerk is **DIRECTED** to attach the necessary service documents to this Order, and Plaintiff is **DIRECTED** to serve them within **thirty days** of the date of this Order.

### D. Service-Related Motions

Next, Plaintiff has filed a number of Motions relating to service and response deadlines.

(*See* Docs. 48, 49, 63, 69, 79, 80, 105, 106, 153, 157). The Undersigned has reviewed the docket and concluded that service has been made on all but two named Defendants—Jones and Sheriff Baldwin. Summons was issued to Defendant Jones just recently, on March 6, 2020. (*See* Doc. 150). And the Clerk is **DIRECTED** to serve the United States Marshal Service within fourteen (14) days of this Order. Also, upon thorough review of the docket, the Undersigned finds that the Defendants who have been served have filed timely responses in accordance with the Federal Rules of Civil Procedure. Plaintiff's Motions are **DENIED without prejudice**.

### E. Motions to File Under Seal

Plaintiff also seeks to file medical documents under seal. (*See* Docs. 38, 51). Yet more recently, Plaintiff represented just the opposite. (Doc. 72 at 11). He stated:

> Also, no need to seal the record or exhibits submitted. This case has helped me get past my own embarrassment of my HIV status. The record should remain open for the experts, agencies, and community organizations I plan to contact for support so that they can be aware of the full record and decide best how to aid myself and others who have become victims of NaphCare Inc. and FCCC."

(*Id.*). Accordingly, Plaintiff's earlier Motions to file documents containing sensitive health information under seal, (Docs. 38, 51), are **DENIED without prejudice**.

### F. Motions to Strike

Plaintiff has moved to strike "all insufficient, redundant, immaterial, impertinent, or scandalous matter flouted as a defense by NaphCare in their Motion to Dismiss." (Doc. 65). He has also moved to strike two of the County Defendants' exhibits. (Doc. 74).

Plaintiff's Motions are improper under the Federal Rules of Civil Procedure. Motions to strike under Rule 12(f) of the Federal Rules of Civil Procedure apply to only pleadings. *See Newsom v. Xenia City Sch. Dist. Bd. Of Educ.*, No. C-3-95-173, 1996 WL 1089865, at * 2 (S.D. Ohio Mar. 25, 1996) (noting that Rule 12(f) applies to pleadings and not motions); *see also Dawson*

*v. City of Kent*, 682 F. Supp. 920, 922 (N.D. Ohio 1998) (noting that Rule 12(f) "relates only to pleadings and is inapplicable to other filings"), *aff'd* 865 F.2d 257 (6th Cir. 1988). Consequently, Plaintiff's Motions to Strike Defendants' Motions and accompanying exhibits (Docs. 65, 74) are **DENIED**.

### G. Motions for Sanctions

Plaintiff has also filed two Motions for Sanctions. (*See* Docs. 87, 155). Plaintiff accuses the "NaphCare Defendants [of] knowingly submit[ing] false and inaccurate documents that have had the effect of misleading this Court and establishing a defense for the Defendant." (Doc. 87 at 1). Plaintiff appears to be referring to the drug administration history records submitted by the County Defendants on December 17, 2019 (Doc. 40). Plaintiff makes similar accusations against Defendant Lyons. (*See* Doc. 155).

Plaintiff may contest the accuracy of Defendants' records through discovery. And Plaintiff acknowledges as much. (*See* Doc. 87 at 5 (asserting that "video surveillance records will show medications was [sic] not administered to Plaintiff")). Plaintiff's Motions (Doc. 87, 155) are, therefore, **DENIED without prejudice**. Further, in her discretion, the Undersigned **DENIES** the NaphCare Defendants' request for costs associated with Plaintiff's Motion (Doc. 122 at 2).

Plaintiff has also filed a Motion labeled as a Motion for Sanctions, (Doc. 95) but appears, instead, to be a sixteen-page sur-reply to Defendants' Motion to Dismiss, (*see generally id.*). Plaintiff's Motion does not state a basis for Rule 11 sanctions and is **DENIED** as a result.

### V. FILING PROTOCOLS

Given that Plaintiff has made over 100 filings in this matter already, the Undersigned has decided that this case must be managed differently. The following rules are hereby in effect as of the date of this Order:

First, and of utmost importance, this Report and Recommendation shall provide a blueprint of this case. This means that Plaintiff may not, without first seeking leave of Court, move to amend to add allegations beyond what the Undersigned has permitted to proceed past this screen.

Second, Plaintiff may not engage in discovery until the Undersigned issues a scheduling order. Once discovery begins, he may not file discovery requests or motions on the docket before declaring, in a sworn affidavit, that he first exhausted his efforts extrajudicially. Relatedly, Plaintiff may not seek to file or file exhibits on the docket until this case has moved past the pleading stage.

Third, Plaintiff may not move to strike Defendants' motions or exhibits, as motions to strike apply only to pleadings.

Fourth, Plaintiff may not, without leave of Court, move for sanctions against Defendants.

The above protocols will allow the parties and the Court to focus on the merits of Plaintiff's case and help curb Defendants' and the Court's burden resulting from excessive filing.

Should Plaintiff choose to violate any of the above protocols, the Undersigned will strike his filing. After three strikes, the Undersigned will be left with no choice but to forbid Plaintiff from making any future filings absent leave of Court. And consistent with this Order, the NaphCare Defendants' Motion to Prohibit Plaintiff from Filing Without Leave of Court (Doc. 166) is **GRANTED in part** and **DENIED in part**.

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a de novo determination of those

portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date:   March 20, 2020                                          /s/ Kimberly A. Jolson
                                                               KIMBERLY A. JOLSON
                                                               UNITED STATES MAGISTRATE JUDGE