IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEMARCO ARMSTEAD,**

      **Plaintiff,**

                                                         **Civil Action 2:19-cv-4857**
     v.                                        **Judge Sarah D. Morrison**
                                                **Magistrate Judge Kimberly A. Jolson**

**BALDWIN, et al.,**

      **Defendants.**

**REPORT AND RECOMMENDATION AND ORDER**

Currently before the Undersigned are eighteen motions filed by Plaintiff. (Docs. 60, 61, 64, 141, 193, 194, 199, 201, 202, 203, 205, 206, 207, 208, 209, 217, 218, 219). Four seek preliminary injunctive relief (Docs. 60, 61, 64, 141), and fourteen seek leave to file (Docs. 193, 194, 199, 201, 202, 203, 205, 206, 207, 208, 209, 217, 218, 219).

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motions for Preliminary Injunction (Docs. 60, 61, 64, 141) be **DENIED**. As for Plaintiff's Motions for Leave to File:

- Docs. 199, 201, 205, 206, and 207 are **GRANTED**; and

- Docs. 193, 194, 202, 203, 208, 209, 217, 218, and 219 are **DENIED**.

**I.    BACKGROUND**

Plaintiff is a pro se prisoner currently incarcerated at Franklin County Correctional Center ("FCCC"). Elsewhere, the Court has summarized the allegations in this case. (*See, e.g.*, Doc. 190). Broadly speaking, Plaintiff's claims fall into two categories—medical and non-medical. With regard to his medical claims, Plaintiff alleges that FCCC's medical provider, NaphCare, as well as NaphCare nurses (the "NaphCare Defendants"), along with the County Sheriff and FCCC

officials (the "County Defendants"), have acted with deliberate indifference to his medical needs, causing him to miss multiple doses of his HIV medication. (*See generally* Doc. 23). Plaintiff's non-medical claims run the gamut and include claims for excessive force, conditions of confinement, religious discrimination, access-to-the-courts, retaliation, and procedural due process. (*See generally* Docs. 23, 34, 42, 90, 188-2).

Plaintiff's deluge of filings has made this case difficult to manage. As the Court recently noted:

> Mr. Armstead seeks to inappropriately use this Court to litigate each menial argument and every immaterial factual contention that Defendants represent to this Court. It is not this Court's job to arbitrate the truth of every statement made to the Court, and it is an excessive burden on this Court's time for Mr. Armstead to file a letter or motion every time that Defendants say something with which he disagrees. Mr. Armstead should also note that it is difficult for the Court to pay attention to what appear to be legitimate concerns when he clogs up the docket and wastes the Court's time with frivolous and immaterial quibbles.

(Doc. 190 at 4; *see also id*. at 5 ("Mr. Armstead has no right to abuse the judicial process and monopolize the Court's time, no matter the merits of his underlying claims.")).

To stem the tide, the Court instituted some ground rules. Specifically, it ordered Plaintiff be required to seek leave of Court before filing any further motions and directed the Clerk to strike any non-motion documents. (*Id*. at 5). The Court warned Plaintiff that his continued harassing conduct could result in Rule 11 sanctions. (*Id*.).

Plaintiff has not heeded that warning. To the contrary, in the weeks following the Court's order, Plaintiff has made nearly thirty filings. Some have already been stricken for violating the Court's directive. Still, over a dozen motions remain pending. Many, as explained below, are frivolous. Plaintiff's conduct demonstrates that further filing restrictions are necessary. Below, the merits of Plaintiff's motions are addressed as well as case management going forward.

    **II.    MOTIONS FOR PRELIMINARY INJUNCTION (Docs. 60, 61, 64, 141)**

In addition to the previously resolved motion for emergency relief (Doc. 6), Plaintiff has filed four additional motions seeking preliminary injunctive relief: a "Motion for Immediate Preliminary Injunction" (Doc. 60); a "Motion for Accommodation" (Doc. 61); a "Motion for Relief, Pleading of Imminent Danger" (Doc. 64); and a "Motion for an Order Requiring County Defendants of the Franklin County Sheriff's Department to Forumulated [sic] an Acceptable Administrative Rule" (Doc. 141). Three concern his First Amendment right of access to the courts (Docs. 60, 61, 141) and one concerns his medical treatment (Doc. 64). Each seeks immediate injunctive relief, (*see generally id.*), so the Undersigned has construed them as motions for a preliminary injunction. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's motions be **DENIED**.

### A. Standard

Although well known—and already explained previously in this case (*see* Doc. 78 at 2– 5)—it is worth explaining how high Plaintiff's burden is here. A preliminary injunction is an extraordinary measure, and the movant must meet a high burden to show that such a measure is justified. *See ACLU v. McCreary Ct.*, 354 F.3d 438, 444 (6th Cir. 2003); *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). Indeed, the proof required to obtain this relief "is much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). Accordingly, the movant must show more than factual issues—he "must affirmatively demonstrate [his] entitlement to injunctive relief." *Davis v. Caruso*, No. 07-11740, 2008 WL 878878, at *3 (E.D. Mich. Mar. 28, 2008).

When considering whether to grant this extraordinary relief, a district court must balance four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether the

> issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

The movant's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of each claim. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). To meet that burden, the movant must demonstrate "more than a mere possibility" of success. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This means that the movant must "show, at a minimum, serious questions going to the merits" of his claims. *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016) (internal quotation marks and citation omitted). The first factor is often determinative:

> [C]ourts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978). In fact, the Sixth Circuit has held that when the proponent of the injunctive relief has no chance of success on the merits of the claim, the Court may dismiss the motion without considering the other three factors. *See Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). Failure to do so is reversible error. *See id.*; *Sandison v. Michigan High School Athletic Ass'n*, 64 F.3d 1026, 1037 (6th Cir. 1995).

*Stanley v. Ohio Dep't of Rehab. & Corr.*, No. C2-02-178, 2002 WL 31403935, at *3 (S.D. Ohio Aug. 12, 2002) (denying motion for injunctive relief after evaluation of only chance of success on the merits factor); *see also City of Pontiac Retired Emps. Ass'n*, 751 F.3d at 430 ("When a party seeks a preliminary injunction on the basis of a potential constitutional violation, the likelihood of success on the merits often will be the determinative factor.").

Under the second factor, the movant "must show that irreparable harm absent injunctive relief is 'both certain and immediate, rather than speculative or theoretical.'" *Kensu v. Borgerding*, No. 16-13505, 2018 WL 6540262, at *4 (E.D. Mich. Oct. 31, 2018), *report and recommendation*

4

*adopted*, No. CV 16-13505, 2018 WL 6527782 (E.D. Mich. Dec. 12, 2018) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy"); *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) (noting that "[a] district court abuses its discretion when it grants a preliminary injunction without making specific findings of irreparable injury").

Under the third and fourth factors—harm to others and the public interest—the context of the case matters. In a prisoner civil rights case like this one, "[p]rison administrators [ ] should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 521 (1979). Consequently, "courts, especially federal courts, should be reluctant to become involved in the internal administration" of correctional institutions. *Hanna v. Toner*, 630 F.2d 442, 444 (6th Cir. 1980). Put simply, federal courts must tread lightly.

On top of the above factors, Plaintiff's case is also subject to § 802 of the Prison Litigation Reform Act (the "PLRA"), which requires preliminary injunctive relief to "be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

**B. Discussion**

Plaintiff seeks immediate injunctive relief for two alleged ongoing constitutional violations—deliberate indifference to his medical needs (Doc. 64) and violation of his First Amendment right to access the courts (Docs. 60, 61, 141).

### *1. Deliberate Indifference (Doc. 64)*

In his "Motion for Relief, Pleading of Imminent Danger" (Doc. 64), Plaintiff alleges that "NaphCare" improperly prescribed him "Betamethasome" for his skin condition "without an initial lab assessment of both [his] blood and urine." (*Id*. at 1). He asserts that corticosteroids, like Betamethasome, "decrease the plasma concentrations of . . . 2 of 4 medications contained in [his] cocktail drug for HIV causing a loss of the therapeutic effects resulting in drug resistance and possibly leading to death." (*Id*.). Perplexingly, though, he additionally accuses NaphCare of "allow[ing] [it] to run out of stock" on several dates in December 2019. (*Id*. at 2). For relief, he states simply that "relief is necessary by aid of this court." (*Id*.).

Plaintiff has not shown that he is likely to succeed on the merits of this claim. "[T]he prescribing of drugs by a physician which causes side effects does not constitute deliberate indifference." *Mason v. Eddy*, No. 1:18 CV 2968, 2019 WL 3766804, at *11 (N.D. Ohio Aug. 9, 2019) (collecting cases and holding that "Plaintiff's disagreement with the manner and method of his HIV treatment is insufficient to support a plausible § 1983 claim for deliberate indifference"). At best, Plaintiff's claims, without further factual allegations, sound in negligence. But "[a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976). Rather, "to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id*.

But Plaintiff does not do this. Instead, he takes issue with the manner and method of his treatment. (*See, e.g.*, Doc. 64 at 1 ("Based on the nature of known risk associated with Betomethsone[,] it is clear I should never have been placed on it.")). So Plaintiff has not alleged

6

facts from which the Undersigned could plausibly infer a constitutional violation, and thus has failed to meet his initial burden for a preliminary injunction. *See Mason*, 2019 WL 3766804, at *11 (citing *Sprague v. Quilter*, No. 3:15-cv-2170, 2016 WL 790480, at *2 (N.D. Ohio Feb. 9, 2016) ("Disagreements between a prisoner and prison medical staff regarding the appropriate diagnosis and treatment are not enough to state a deliberate indifference claim.")).

Moreover, Plaintiff has not shown a likelihood of certain and immediate rather than speculative irreparable harm. Importantly, in his motion, Plaintiff alleges that medical staff have refused to respond to his grievances or conduct further testing. (*See generally* Doc. 64). But it is clear from Plaintiff's multiple filings in this case that he is receiving medical treatment. And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

In sum, the balance of the factors here weighs against issuing a preliminary injunction. It is, therefore, **RECOMMENDED** that Plaintiff's motion (Doc. 64) be **DENIED**.

### 2. *Access to the Courts (Docs. 60, 61, 141)*

Additionally, Plaintiff seeks immediate injunctive relief to cure his alleged inability to access the courts. (*See generally* Docs. 60, 61, 141). Specifically, he says that "staff have refused to make the law library available for use" and "denied" him "attorney calls." (Doc. 60 at 2–3). He further alleges that FCCC staff have, on occasion, mishandled his "legal packages." (Doc. 141 at 2). For relief, he seeks a Court order:

- "forcing FCCC to make the law library available and allow[ing] [him] access to attorney calls during appropriate hours";
- "dispatch[ing] federal officials to FCCC";
- "investigat[ing] the conditions of the jail";

7

- "provid[ing] [him] with a photo copy of all exhibits that have been submitted by both the plaintiff and defendants"; and
- requiring "Dallas Baldwin and the County Defendants of the Franklin County Sheriff's Dept. to formulate an acceptable Administrative Rule (AR) that . . . ensures the rights of inmates [sic] access to the Court, law library facilities and or individuals with legal training and reasonable tools necessary (pens, paper & stamps) to pursue habeas petitions, direct appeals and civil rights claims."

(Doc. 60 at 1; Doc. 61 at 1; Doc. 141 at 1).

Plaintiff's motions fail for several reasons. Most important, he has not demonstrated a likelihood of success on the merits and, relatedly, has not shown irreparable injury. While prisoners have a constitutional right of access to the courts, meaningful access varies depending on the circumstances, and prison officials are afforded discretion in determining how to administer that right. *See Bounds v. Smith*, 430 U.S. 817, 821, 830–31 (1977). On point here, "[a]n inmate who claims his access to the courts was denied merely because he was denied access to the prison library, or certain books, fails to state a claim." *Jackson v. Coyne*, No. 3:17-CV-P174-TBR, 2017 WL 3528605, at *2 (W.D. Ky. Aug. 16, 2017) (citing *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985)). "Rather, the inmate 'must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim.'" *Jackson*, 2017 WL 3528605, at *2 (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). Said differently, an inmate must show actual injury. *Id.* (citing *Lewis*, 518 U.S. 343 at 351).

To show actual injury, the plaintiff "must show, 'for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim.'" *Jackson*, 2017 WL 3528605, at *2 (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)); *see also Looper v. Gibson*, 63 F. App'x 877, 878 (6th Cir. 2003) ("It is not enough, however, for the plaintiff to simply allege

8

that an adequate law library or some alternate form of legal assistance was not made available to him. He must also show that the defendants' conduct in some way prejudiced the filing or prosecution of a legal matter."). Importantly, this requirement applies even where the plaintiff alleges that he is being denied access to the law library altogether. *See Miller v. Blackwelder*, No. 4:07-CV-14, 2007 WL 1079998, at *6 (E.D. Tenn. Apr. 9, 2007) (citing *Lewis*, 518 U.S. at 353 n.4) ("Even in a systemic case where the prison officials have utterly denied prisoners all access to legal resources and materials, a plaintiff still must show his attempts to present a non-frivolous claim respecting his conviction or conditions of confinement were somehow impeded.").

Plaintiff has failed to show actual injury, and his claims are, therefore, unlikely to succeed on the merits. Most fatal to his claim, Plaintiff makes only general allegations that, because FCCC staff has mishandled his "legal mail" and denied him access to the law library, laptop, "legal calls," and photocopies, it has been difficult for him to effectively litigate this case. (*See generally* Docs. 60, 61, 141). Importantly, he does not allege that Defendants' conduct caused actual injury such as missing a court-imposed deadline. Nor does he allege the existence of immediate and certain rather than speculative irreparable harm. Instead, he references harm "in some theoretical sense" but fails to "go one step further and demonstrate" actual prejudice. *Lewis*, 518 U.S. at 348; *cf. Ryan v. Norwood*, No. 1:14-CV-410, 2014 WL 2207192, at *6 (W.D. Mich. May 28, 2014), *aff'd* (Apr. 10, 2015) (noting that "the Sixth Circuit has repeatedly held that the constitutional right of access to the courts does not entitle prisoners to free access to photocopying machinery" and that, "[e]ven if [defendants'] conduct rose to the level of a constitutional violation, in the absence of any allegations to suggest that Plaintiff suffered actual injury, Plaintiff fails to state a claim of constitutional significance").

Further, regarding Plaintiff's complaints concerning FCCC's handling of his mail, the

Undersigned must note the obvious: Plaintiff successfully sends mail to the Court on a weekly, sometimes daily, basis. The docket unmistakably shows that both the Clerk of this Court and FCCC staff appear to be doing the best they can given the prolific nature of Plaintiff's filing. All told, Plaintiff has failed to show a strong likelihood of success on the merits of his access-to-the-courts claim or certain and immediate rather than speculative irreparable harm.

Briefly, the Undersigned notes that "[t]he Court's intervention in internal prison operations without an urgently compelling and extraordinary reason is viewed as against the public interest." *Jackson*, 2017 WL 3528605, at *2 (citation omitted). And despite Plaintiff's complaints to the contrary, Defendants have not prevented Plaintiff from making hundreds of filings in this case. Absent a showing of actual prejudice, the Undersigned will not recommend granting the extraordinary remedy of a preliminary injunction and intervene with FCCC's policies and protocols surrounding the law library and prison mail. *See, e.g.*, *Carr v. Noble*, No. 2:13-CV-0762, 2014 WL 12834169, at *2 (S.D. Ohio Nov. 19, 2014) (noting that, despite his claim of being denied access to the courts, plaintiff was "able to timely file numerous pleadings, motions and briefs, including a 100 page complaint with other 100 pages of exhibits attached to it").

Finally, to the extent Plaintiff's motions seek relief for retaliation, (*see, e.g.*, Doc. 60 (alleging that "staff" have restricted his access to the law library "in retaliation meant to hinder the quality of claim and response [he] is able to litigate"), the Undersigned has granted Plaintiff leave to amend his complaint to raise similar allegations of retaliation, (*see, e.g.*, Doc. 168 (granting Plaintiff leave to amend to assert claims that Defendants Blade, Farkas, Fultz, Carmen, and Howard denied him access to legal calls in retaliation for filing this lawsuit)). But Plaintiff has not met his heavy burden to show that the extraordinary remedy of a preliminary injunction is warranted to remedy these alleged wrongs.

10

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motions for Preliminary Injunction (Docs. 60, 61, 141) be **DENIED**.

### III.  MOTIONS FOR LEAVE TO FILE (Docs. 193, 194, 199, 201, 202, 203, 205, 206, 207, 208, 209, 217, 218, 219)

The Undersigned turns now to Plaintiff's Motions for Leave to File. They fall into two general categories—motions to supplement the record and motions seeking leave to amend. The Undersigned addresses each category in turn.

#### A.  Motions to Supplement the Record (Docs. 194, 203, 208, 206)

To begin, Plaintiff has filed several motions that are best described as an attempt to supplement the record in this case. As explained below, all but one violates the Court's previous order.

##### *1. Motion for Leave to File Response to NaphCare Defendants' Filing of Drug Administration Records (Doc. 194)*

Plaintiff has filed a Motion for Leave to File Response to NaphCare Defendants' Filing of Drug Administration Records for 3/13/20–3/26/20. (Doc. 194). Specifically, he seeks to file a response asserting:

> (1) Amanda Lyons has created a position and or job title for NaphCare Inc. that does not exist; (2) my prescriptions are always given in alotments [sic] of no less than 30 days with the option for 90 day supplies; and (3) 4 instances of medication running out of stock in 44 days is very concerning . . . I have been told by nursing staff that it is Amanda Lyons [sic] responsibility to order medication from the NaphCare owned pharmacy and that the NaphCare Inc. company only uses the NaphCare owned pharmacy . . . [f]or the sake of clarity so that liability can be assessed correctly, can Amanda Lyons please identify the alleged 'pharmacy nurse' in her declaration who is responsible to order medication.

(*Id.*).

There are two problems with Plaintiff's motion. As, the Undersigned already has explained, Plaintiff must contest the accuracy of Defendants' records through discovery, not with superfluous filings. (*See, e.g.*, Doc. 168 at 22). Plaintiff also has been warned that he may not

11

"file a letter or motion every time that Defendants say something with which he disagrees." (Doc. 190 at 4). Yet, as this motion shows, Plaintiff continues to do just that. Moreover, his allegations are repetitive and unnecessary. The Court is already aware that Plaintiff's medication has run out of stock on several occasions in the last several months. (*See, e.g.*, Doc. 195-2). And he has raised these concerns in other motions. (*See, e.g.*, Docs. 171, 192). His motion (Doc. 194) is **DENIED** as a result.

Once again, Plaintiff is **ORDERED** to stop filing motions attacking the accuracy of Defendants' medical records. Plaintiff may seek clarification or undermine the accuracy of the records through the discovery process.

### 2. *Motion for Leave to File Motion Requiring Defendants Submit Evidence (Doc. 203)*

Similarly, Plaintiff has filed a Motion for Leave to File a Motion Requiring Defendants to Submit All Related Writings. (Doc. 203). He requests leave to file a motion ordering Defendants to produce "full related records for the past 7 years to exhibits submitted with Doc. 142." (Doc. 203-1 at 1). More specifically, he seeks "records maintained in its systems to include intake assessment, all medical records including lab results, sick call requests, appointment notes, treatment plans, diagnosis and administrative documents as well as NaphCare mental health records for the past 7 years." (*Id.* at 2).

It appears that Plaintiff attempts to rely on the "rule of completeness" to compel this discovery. (*See id.*). But that rule does not apply here. Rather, his motion is one for discovery. The Undersigned has made clear that Plaintiff may not engage in discovery until she issues the scheduling order. (Doc. 168). Because his motion (Doc. 203) directly contravenes that directive, it is **DENIED**.

Moving forward, Plaintiff is **ORDERED** not to file discovery requests or motions on the

docket absent leave of Court. In any motion for leave to file a discovery-related motion, Plaintiff must attest, in a sworn declaration—certified under penalty of perjury—that he first exhausted his efforts to resolve the discovery dispute or request extrajudicially by meeting and conferring with Defendants.

3. *Motion for Leave to File Exhibits (Doc. 208)*

Relatedly, Plaintiff seeks leave to file four NaphCare sick call requests as exhibits to his proposed motions for leave to amend. (Doc. 208). As the Undersigned previously explained, "Plaintiff may rely on evidence outside of the pleadings if and when his claims proceed to summary judgment." (Doc. 168). Under that order, Plaintiff was directed not to seek to file or file exhibits until that point. (*Id*. at 23). Plaintiff's motion (Doc. 208) directly contravenes that order, and it is thus **DENIED**.

Plaintiff is **ORDERED** not to seek leave to file or file exhibits on the docket until directed otherwise by the Court.

4. *Motion for Leave to File Motion to Unseal (Doc. 206)*

Next, Plaintiff seeks leave to file a Motion to Unseal the County Defendants' Exhibits. (Doc. 206). Plaintiff has previously expressed that he does not wish for exhibits to be submitted under seal. (*See, e.g.*, Doc. 72 at 11). And the Court has noted that it "sees no reason to have any documents sealed against his wishes." (Doc. 116 at 25). Thus, Plaintiff's motion (Doc. 206) is **GRANTED**, and the Clerk is **DIRECTED** to unseal the exhibits in Docs. 40 and 41 and mail copies of them to Plaintiff via certified mail.

**B. Motions for Leave to Amend (Docs. 193, 199, 201, 202, 205, 207, 209, 217, 218, 219)**

Plaintiff has already filed dozens of motions for leave to amend his complaint. Currently before the Undersigned are ten more.

13

### 1. Doc. 193

Plaintiff seeks leave to amend to add a wide variety of claims against both named and unnamed Defendants. (Doc. 193). He alleges that, in the evening of March 31, 2020, Defendants Howard, Fultz, and Farkas escorted him to the medical clinic. (Doc. 193-7 at 1). According to him, he did not have an appointment, medical staff members were not present, and Defendant Farkas called for a nurse without authority to do so. (*Id*. at 2). He alleges that a nurse "show[ed] up and accesses [sic] [him] at the direction of Sheriffs [sic] Deputies and order[ed] a breathing treatment." (*Id*.). Defendants Farkas and Howard then allegedly searched his cell and removed a second pair of pants that Plaintiff "retained [] in response to chills." (*Id*. at 3). During the search, they allegedly kept him handcuffed and "crowded" him. (*Id*.). Plaintiff further alleges that, upon noticing his medicated shower soap "running down the drain," he "attempted to salvage it," but Defendant Farkas "snatche[d] the soap from [his] hands, thr[ew] it and grab[bed] [him] by the neck and start[ed] putting pressure on [his] throat with his large hand, and t[old] [him] to give him the pants that [were] already half way down [his] legs," and "threaten[ed] to spray [him]" with mace. (*Id*.). After Defendants left, Plaintiff alleges that he noticed multiple personal items missing and his legal work had been "crump[led] and rippe[d]." (*Id*. at 4).

Next, Plaintiff alleges that, on April 1, 2020, the "deputies . . . opened [his] cell door to reveal him nude" and "removed [his] light dimmers to prevent the bright light from affecting [his] ADA related disability." (Doc. 193-1 at 1–2). Plaintiff alleges that Defendants Howard and Blade continued to harass him and searched his cell for a second time on April 2, 2020. (Doc. 193-2). Finally, he alleges that, on April 6, 2020, Defendants Howard and Blade "opened his cell without notice to harass [him] about light dimmers in an over aggressive response" and Defendant Howard "removed [his] extra toilet paper and issue[d] [him] a 48 hour restriction while denying [him] a

14

shower." (*Id.*).

These allegations are too remote in time and scope to be a part of this case. For instance, Plaintiff fails to set forth sufficient facts to show that Defendants' conduct was motivated by Plaintiff's lawsuit. And his halfhearted references to retaliation scattered throughout his proposed allegations, (*see generally* Doc. 193), are not sufficient to expand the scope of this case even further. Otherwise, Plaintiff "could file virtually unlimited amendments that bear no relationship to the original claims and defendants so long as he included a cursory allegation that the new incident was in 'retaliation' for an existing lawsuit or claim." *Dyess v. Mullins*, No. 1:16-CV-910, 2017 WL 3838642, at *3 (S.D. Ohio Sept. 1, 2017). Such a result would unduly prejudice Defendants, burden the Court, and prohibit this case from proceeding to the merits. Accordingly, Plaintiff's motion (Doc. 193) is **DENIED**.

### *2. Docs. 199, 201, 205, 209*

Next, Plaintiff seeks leave to amend to add additional claims against Defendants Howard and Farkas (Docs. 199, 201, 205) and relatedly, seeks leave to file a motion requesting a transfer to a different facility (Doc. 209). Broadly speaking, Plaintiff alleges that Defendant Howard has been harassing him in retaliation for this lawsuit. (*See generally* Docs. 199, 201, 205). And Plaintiff sets forth concrete, albeit repetitive, facts to state a plausible claim for retaliation. For example, he alleges that Defendant Howard removed his "legal work" from his cell while he was in the shower (Doc. 199) and strip searched him "as a means to harass, humiliate and retaliate against [him] for [this case]" (Doc. 201 at 2–3). He further alleges that since Defendant Howard learned about Plaintiff's lawsuit, he has become "very disrespectful and aggressive in his encounters with [Plaintiff]," and has "continued this aggression and disrespect" at "almost every encounter." (*Id*. at 6). Plaintiff alleges that his "nerves are shot" as a result. (*Id*.). Plaintiff's

15

allegations against Defendant Farkas are similar. (*See* Doc. 205). Specifically, he alleges that, on April 15, 2020, Defendants Farkas and Howard harassed him during medication pass and that Defendant Howard pepper sprayed him without cause. (*Id*. at 1–5). These motions (Docs. 199, 201, 205) are **GRANTED**, and Plaintiff's additional First Amendment retaliation claims against Defendants Howard and Farkas are now a part of this case.

But Plaintiff's allegations do not support granting leave for Plaintiff to file a motion for a preliminary injunction. (*See* Doc. 209). In his "Motion for Leave of Court to Supplement the Current Request to Reopen TRO/PI," "Plaintiff asserts that, due to the retaliation described above, he should be granted leave to file a motion for a preliminary injunction seeking his transfer "to another secure facility such as Twin Valley Behavioral health (a local State facility) or correctional facility that is not managed by Franklin County Sherriff's Dept. or NaphCare Inc." (Doc. 209-1 at 1). While some of Plaintiff's factual allegations are sufficient for a motion for leave to amend his complaint, they do not warrant the extraordinary relief he seeks, and the motion (Doc. 209) is **DENIED**.

### 3. *Docs. 202, 217, 218, 219*

Plaintiff has also filed a one-page motion "to add claims of racial discrimination, illegal search and seizure, cruel and unusual punishment/due process violations, equal protection of the law, retaliation, and harassment" against Defendant Howard and John Doe Deputies (Doc. 202) and three similarly cursory motions to "renew" his previously dismissed claims (Docs. 217, 218, 219 (seeking to "renew" Docs. 210 and 211)). These motions are frivolous. For example, Plaintiff alleges that "[o]n 4/10/20 from approx. 3:45–10 p.m. Dep. Howard choose [sic] [to] engage in maliciously motivated, unrelated to institutional security and totally without penological justification as a means to harass, intimidate and retaliate against Plaintiff Armstead for the above

16

action" and that "Dep. Howard acted in concert with John Doe deputies." (Doc. 202). Plaintiff makes similarly conclusory allegations in the motions he seeks to "renew." (*See* Docs. 217, 218, 219 (seeking to "renew" and add allegations to Docs. 210 and 211)). Plaintiff's motions are wholly conclusory, rely on only formulaic statements of law, and contain no facts from which the Undersigned could plausibly infer a constitutional violation. They are **DENIED** as a result.

Thus far, the Undersigned has been generous in finding that many of Plaintiff's proposed allegations relate back to the original Complaint. But Plaintiff's conduct and the substance of his duplicitous motions are evidence of bad faith. The parties must now proceed with discovery, and Plaintiff's repeated attempts to expand the scope of this case must come to an end. Plaintiff may not, absent good cause, move to amend after the deadline set forth in the scheduling order. In any future motion for leave to amend, Plaintiff is **ORDERED** to set forth good cause for failing to seek leave to move to amend earlier and detail with particularity the factual allegations supporting his proposed claims.

### 4. *Motion for Leave to Add Ofuri Sttah in Place of Jane Doe Nurse (Doc. 207)*

Plaintiff also seeks leave to amend to add Ofuri Sttah as a Defendant in this case in place of "Jane Doe Nurse." (Doc. 207). Plaintiff alleges that he recently discovered that "Ms. Ofuri Sttah caused him to miss many doses of [his] Stribild." (Doc. 207-1). Specifically, he alleges that, "when notified [he] was requesting missed dose within 6 hours of failed administration, [she] refused to return to [his] cell and administer Stribild." (*Id*.). Plaintiff's motion is **GRANTED**, and Ofuri Sttah shall substitute "Jane Doe Nurse" as a Defendant in this case. The Clerk shall attach the necessary service documents to this Order, and Plaintiff is **DIRECTED** to serve Defendant within thirty days of the date of this Order.

### IV. FILING PROTOCOLS MOVING FORWARD

"The Supreme Court has made it clear that a district court has inherent authority to sanction parties appearing before it for acting vexatiously, wantonly, in bad faith, or for oppressive reasons." *Petty v. Rush*, No. CIV.08-159-GFVT, 2010 WL 1796573, at *3 (E.D. Ky. May 4, 2010) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). "Although extreme deference is to be given to pro se plaintiffs, the right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not comply with relevant rules of procedural and substantive law." *Petty*, 2010 WL 1796753, at *3 (quotation marks and citations omitted).

And "[w]hile it is not unreasonable for a litigant to amend or supplement a filing one time if something has been omitted due to a good faith mistake, [Plaintiff's] actions in bombarding this Court with repetitive, excessive unauthorized filings . . . constitutes bad faith and grounds for sanction." *Id.*; *see also Gregg v. SBC Ameritech*, 321 F. App'x 442, 449 (6th Cir. 2009) (upholding district court's imposition of sanctions where pro se litigant engaged in abusive filing tactics and unnecessarily delayed the proceedings by filing redundant pleadings). Plaintiff has been warned regarding his conduct. Yet he continues to bog down this case and take up the Court's resources with his redundant and unauthorized filings.

Accordingly, the following rules, also discussed above, are in place as of the date of this order. If a filing violates these rules, it will be stricken from the docket. Moreover, should Plaintiff's conduct continue, the Court will consider imposing sanctions.

1. Before filing anything on the docket, Plaintiff is **ORDERED** to file a "Motion for Leave to File." But unlike his previous Motions, Plaintiff shall not attach the proposed motion to the motion itself. Rather, Plaintiff must set forth, in a one-page memorandum, good cause supporting his request for leave to file. Further, the motion may not seek leave to file any of the following:

    a. a motion attacking the accuracy of Defendants' records or otherwise seeking to supplement the record; or

    b. a motion for discovery, unless that motion is supported by Plaintiff's sworn declaration, certified under penalty of perjury, that he first exhausted his efforts to resolve the discovery dispute or request extrajudicially by meeting and conferring with Defendants.

2. Plaintiff must file any motion for leave to amend by the deadline set forth in the scheduling order. The motion must set forth good cause for failing to move to amend earlier and detail with particularity the factual allegations supporting his proposed claims.

## V. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motions for Preliminary Injunction (Docs. 60, 61, 64, 141) be **DENIED**. As for Plaintiff's Motions for Leave to File:

- Docs. 199, 201, 205, 206, and 207 are **GRANTED**; and
- Docs. 193, 194, 202, 203, 208, 209, 217, 218, and 219 are **DENIED**.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a de novo determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: June 1, 2020               /s/ Kimberly A. Jolson
                                 KIMBERLY A. JOLSON
                                 UNITED STATES MAGISTRATE JUDGE