UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEMARCO ARMSTEAD,**

                **Plaintiff,**         :

      **v.**                                **Case No. 2:19-cv-4857**
                                           **Judge Sarah D. Morrison**
                                         **Magistrate Judge Kimberly A.**
**SHERIFF DALLAS**                    **Jolson**
**BALDWIN,** *et al.*,              :

                **Defendants.**

<u>**OPINION AND ORDER**</u>

This matter is before the Court on the Defendants' Motions to Enforce Settlement Agreement. (ECF Nos. 307, 309.) Plaintiff Demarco Armstead has responded (ECF No. 312), and Defendants have each replied (ECF Nos. 314, 315). The matter is now ripe for consideration. For the reasons set forth below, Defendants' Motions are **GRANTED**.

**I.    BACKGROUND**

Without assistance of counsel, Mr. Armstead first filed suit on November 4, 2019, against several Franklin County employees (the "County Defendants") and medical services contractor Naphcare, along with several of its employees (the "Naphcare Defendants"). (*See* ECF No. 1.) Among other things, Mr. Armstead alleged that Defendants wrongfully withheld certain life-sustaining medications while he was detained at the Franklin County Correctional Center ("FCCC"). (*See, e.g.*, Compl., ECF No. 1-2.)

1

Six months and more than 200 filings later, the Court appointed counsel to represent Mr. Armstead at mediation. (ECF No. 236.) Mr. Armstead accepted the limited representation. (ECF No. 275.) On October 6, 2020, the Court was notified that Mr. Armstead had been released from FCCC, and was no longer detained. (ECF No. 298.) The mediation went forward on November 17, 2020, and spanned hours. The County Defendants represent that the Court-appointed mediator called at 4:58 p.m. to notify counsel that Mr. Armstead had accepted their offer of "$1,000.00 to resolve all the claims against them." (ECF No. 307, 2.) The Naphcare Defendants similarly represent that the Court-appointed mediator called around 5:00 p.m., advising that Mr. Armstead had agreed to dismiss the pending action, sign a general release of claims, and keep the terms of settlement confidential, in exchange for $3,000.00. (ECF No. 309, 2.) Thereafter, counsel for the Defendants coordinated with Mr. Armstead's appointed counsel to exchange information and documents necessary to effectuate the settlement, including a release. (*See, e.g.,* ECF No. 307, PAGEID # 2502–04.)

On November 23, 2020, the Court-appointed mediator reported the case as settled. (*See id.*, PAGEID # 2505.) The following day, the Court memorialized as much in a notation order setting a status conference for late-December, unless dismissal had been entered in the meantime. (ECF No. 301.) On November 25, 2020, Mr. Armstead's appointed counsel emailed the Court and counsel for the Defendants, stating:

2

All –

We have been advised by Mr. Armstead that he has changed his mind and no longer wishes to settle the case. He asked us to convey this to you. Mr. Armstead is aware that because the mediation has ended, so too has our representation. Today, we will be filing a notice of Mr. Armstead's decision and formalizing the end of our representation.

(ECF No. 307, PAGEID # 2506.)

## II.    DISCUSSION

Defendants now ask the Court to enforce the settlement agreement entered into at the close of mediation on November 17, 2020. (*See* ECF Nos. 307, 309.) Mr. Armstead opposes the Motions, arguing that the parties never entered into a binding settlement agreement, because a meeting of the minds did not exist and because the terms of settlement had not been approved by the Franklin County Board of Commissioners. (*See* ECF No. 314.) Upon review of the parties' submissions, and absent a request by the parties, the Court determines an evidentiary hearing on the Motions to Enforce Settlement Agreement is not necessary.

Settlement agreements are a type of contract, enforceable by either party. *Cont'l W. Condo. Unit Owners Assoc. v. Howard E. Ferguson, Inc.*, 660 N.E.2d 431, 432 (Ohio 1996) (citing, *inter alia*, *Spercel v. Sterling Indus.*, 285 N.E.2d 324, 325 (Ohio 1972)). Generally, a district court has the authority and discretion to rule on a motion to enforce an agreement in settlement of litigation pending before it, even if the agreement has not yet been reduced to writing. *See, e.g., Newman v. Gaudet*, No. 1:06-cv-614, 2007 WL 9734375, at *2 (S.D. Ohio Feb. 1, 2007) (citing, *inter alia*, *Re/Max Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001)). However,

3

"[w]here parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon" them. *Rulli v. Fan Co.,* 683 N.E.2d 337, 339 (Ohio 1997). *See also Brockwell v. Beachwood City Sch. Dist.*, No. 1:04-cv-1155, 2008 WL 918266, at *8 (N.D. Ohio Mar. 31, 2008). Thus, "[b]efore enforcing a settlement, a district court must conclude that an agreement has been reached on all material terms." *Newman*, 2007 WL 9734375, at *2 (citation omitted).

In Ohio, a valid contract requires "a meeting of the minds as well as an offer and acceptance." *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 460 (6th Cir. 2011) (quoting *Rulli,* 683 N.E.2d at 338 (syllabus)). The Sixth Circuit has explained:

> Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time. What it does require is that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous.

*216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) (citations omitted). As applied to settlement agreements, in particular: The agreement need not be written to be binding, but "'the terms of the agreement must be reasonably certain and clear.'" *Smith*, 434 F. App'x at 460 (quoting *Rulli,* 683 N.E.2d at 339). Further, a party may not avoid its obligations under a settlement agreement simply by experiencing a change of heart or mind. *See also Tsakanikas v. Nationstar Mrtg., LLC*, No. 2:12-cv-176, 2013 WL 3155777, at *3 (S.D. Ohio June 20, 2013) ("[H]indsight regrets will not suffice to unilaterally reopen or throw out concluded negotiations."); *Spercel*, 285 N.E.2d at 327 ("To permit a party to

4

unilaterally repudiate a settlement agreement would render the entire settlement proceedings a nullity, even though, as we have already determined, the agreement is of binding force.").

Defendants here argue that a valid and enforceable settlement agreement was entered into, and that all material terms of the settlement agreement were certain and clear. The Court agrees. Defendants each made an offer. Mr. Armstead accepted. The Court-appointed mediator understood an agreement to have been reached. Counsel began work to formalize the settlement agreement and perform as it required. And the Court journaled the fact of settlement. Eight days after mediation concluded, Mr. Armstead expressed that he "changed his mind and no longer wishe[d] to settle the case." (ECF No. 307, PAGEID # 2506.) A valid and enforceable settlement agreement was formed at the November 17, 2020 mediation—neither its existence nor its material terms can reasonably be disputed, and this Court may properly enforce its terms.

In his Response, Mr. Armstead offers several arguments against enforcing the settlement agreement. (ECF No. 312.) In particular, Mr. Armstead argues that (i) he did not understand that the settlement was intended to be all-encompassing, (ii) certain of his "non-monetary demands" were not addressed in the settlement agreement, and (iii) as to the County Defendants, the agreement could not be binding until the Board of Commissioners adopted a resolution approving the settlement terms. Each argument is unavailing.

Mr. Armstead first argues that he did not understand that the mediation and resulting settlement were intended to finally resolve all of his claims against the Defendants. This argument fails. As noted above, courts look to the objective conduct of the parties to determine whether a valid and enforceable agreement exists—not to Mr. Armstead's subjective understanding. *See Bosley v. 21 WFMJ Television, Inc.*, 245 F. App'x 445, 451 (6th Cir. 2007) (citing *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 420 (6th Cir. 2000)). Mr. Armstead concedes in his Response that he "offer[ed] a verbal yes to settle the case on 11/17/20." (ECF No. 312, PAGEID # 2520.) Although he now alleges "confusion of the terms, conditions of both monetary and non-monetary damages, [and] legal and administrative process of settlement conferences" (*id.*), Mr. Armstead was represented by highly competent and well-respected counsel at the hours-long mediation. What's more, the mediation was conducted by another highly competent and well-respected attorney, experienced in the role of court-appointed mediator. In other words, Mr. Armstead had ample resources and opportunity to ensure that the proposed settlement terms were in alignment with his understanding and expectations—and it was incumbent upon him to do so *prior* to 'offering a verbal yes.'

Similarly, Mr. Armstead argues that the settlement agreement does not address certain of his demands for "non-monetary relief." (*Id.*) As the Naphcare Defendants point out, Mr. Armstead does not specify the nature of the additional relief sought. (ECF No. 315, 2.) And, in light of the fact that Mr. Armstead had been released from custody well before the mediation, the Court struggles to imagine any

6

additional non-monetary relief to which he might be entitled. In short, the argument fails to raise doubt about whether there was a meeting of the minds as to any material term of settlement.

Finally, Mr. Armstead argues that the settlement agreement could not have been binding and enforceable because it had not been approved by the Board of Commissioners. Mr. Armstead is correct that a contract cannot be binding on the County unless and until it has been approved by the Board. *See* Ohio Rev. Code § 305.25. Nevertheless, Mr. Armstead agreed to settle his claims against the Defendants for definite and mutual consideration. The fact that the agreement, negotiated by the Assistant Prosecuting Attorneys acting as statutorily-sanctioned legal adviser to the Board of Commissioners (*see* Ohio Rev. Code § 309.09(A)), was subject to statutorily-required approval by the Board does not diminish the binding nature of that agreement on Mr. Armstead. *Cf. Jones v. City of Cleveland*, No. 1:19-CV-01275, 2020 WL 3270706, at *7 (N.D. Ohio June 17, 2020) ("[T]he 'insertion in [an] acceptance of a condition which merely expresses that which would be implied in fact or in law by the offer does not preclude the consummation of the contract, since such a condition involves no qualification of the acceptor's assent to the terms of the offer.'") (quoting *Metal Craft Docks Acquisition, Inc. v. Richlak*, Nos. 2001–G–2351, 2001–G–2368, 2003 WL 138478, at *3 (Ohio Ct. App. 11th Dist. Jan. 17, 2003)).

Accordingly, Defendants' Motions to Enforce Settlement Agreement (ECF Nos. 307, 309) are **GRANTED**. The parties are **ORDERED** to perform in

accordance with the settlement agreement reached at the November 17, 2020

mediation.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**